IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Christopher Santos Orlina, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:22cv417 (CMH/IDD) |
| | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Christopher Santos Orlina ("Petitioner" or "Orlina"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2019 in the Circuit Court of the City of Virginia Beach, Virginia conviction for felony object sexual penetration, in violation of Code § 18.2-67.2. The Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. [Dkt. Nos. 11-13]. Petitioner was advised of his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss [Dkt. No. 11], and he filed a response. [Dkt. Nos. 17-18]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Procedural History

On August 1, 2018, Petitioner was convicted in the circuit court of felony object sexual penetration, in violation of Code § 18.2-67.2. (Commonwealth v. Orlina, Case No. CR17-3282) (CCT at 89). By Order dated January 15, 2019, the court sentenced Orlina to 30 years in prison with all but 12 years suspended. (Id. at 125-26).

Orlina, by counsel, filed a petition for appeal in the Virginia Court of Appeals, alleging

the evidence was insufficient to establish Orlina used "the necessary force required under the

statute to accomplish the act." (Orlina v. Commonwealth, Record No. 0308-19-1) ( CAV at 17).

The Court found the alleged error was barred under Va. S. Ct. R. 5A:18 because it was not raised

at trial and that the ends of justice exception did not apply because the record established that

force was used. The court summarized the evidence as follows:

> In 2016, K.K. started receiving massage therapy from appellant to treat a stress
> related jaw disorder. For each massage, she undressed except for her underwear
> and lay down on a table under a "two-blanket system." In August 2017, K.K.
> injured her shoulder at work and scheduled an appointment with appellant for
> treatment. When she arrived for the appointment, however, neither appellant nor a
> receptionist was there. Appellant arrived late and told her that she "looked good ...
> like [she] had lost weight" as he was walking her back to the massage room.
>
> Appellant began massaging K.K.'s back and asked her whether she was still
> engaged; she answered, "no." Appellant finished massaging her back and told her
> to roll over. She complied, keeping her body under the blankets. Appellant lifted
> the blanket to expose her left leg and began massaging her left thigh "all the way
> down to [her] calf." He "tuck[ed]" the blanket under her so that her hip,
> underwear, and buttocks were still covered.
>
> Appellant covered K.K.'s left leg with the blanket and began massaging the right
> side of her body. With his left hand on K.K.'s right shoulder, appellant "pull[ed]
> her leg out from the blanket" with his right hand. Appellant did not "tuck" the
> blanket like he had on her left side; rather, he pulled her leg "in [such] a way that
> ... [her] entire side [was] exposed." He began "squeez[ing]" her thigh and moving
> his hand "up towards [her] genital area." Then, "in one swift motion," appellant
> moved his hand under K.K.'s underwear. She felt his fingers "all the way" "inside
> of" her "vagina," his "knuckles" on the outside of her labia, and his thumb on her
> "butt area." At the same time, appellant was "pushing down" with his left hand on
> her shoulder and chest so that she "couldn't get up."
>
> K.K. "panicked," lost her voice, and started "physically shaking." Appellant was
> "moaning" as he moved his fingers "in and out" of her vagina. K.K. "found her
> voice" and repeatedly told appellant to "stop," but he did not stop until she hit his
> arm. Appellant apologized and "started squeezing [her] arms up and down," but
> she insisted that he leave the room. He did, and K.K. redressed herself, "ran" out
> of the building, and drove home. She testified that she felt pain in her "vaginal
> area" the next day and rated it as an "eight" on a scale of "one to ten."
>
> K.K. reported the incident to the police the following day, and Detective Snell set
> up and recorded a "monitored phone call" between appellant and K.K. During the
> call, K.K. asked appellant why he stuck his fingers inside of her, and appellant

2

responded that "[his] body was telling [him] to do that." He also stated that he
was trying to "release" her "pelvic muscles" and "emotions," but she kept
moving. Snell interviewed appellant a few days later, and appellant stated that he
touched K.K.'s "pelvic floor" as part of a "myofascial release technique," but he
had "no idea" whether "he put his fingers in her vagina."

At the close of the Commonwealth's case-in-chief, appellant moved to strike the
evidence. He argued that K.K.'s testimony was incredible due to inconsistencies
between her testimony and what she told Detective Snell in the days following the
incident. The trial court denied the motion. Appellant presented the testimony of
ten character witnesses, all of whom testified that he has a reputation for honesty
and being sexually appropriate as a massage therapist. Appellant also testified in
his defense; he stated that he immigrated to the United States in 2008 from the
Philippines and learned English as a second language. He testified that in
Tagalog, his native language, "inside" means "within" or to be "inside [one's]
soul" or "heart." He claimed that he was giving K.K. a myofascial massage,
which is designed to treat the "whole body," and denied putting any part of his
hand inside K.K.'s vagina.

At the close of the evidence, appellant renewed his motion to strike. He argued
that K.K. and Snell's testimony was incredible and that the Commonwealth failed
to prove that he placed his fingers inside K.K.'s vagina. The trial court denied the
motion and, after argument by counsel, convicted him of object sexual
penetration. The court found that K.K.'s testimony was "extremely credible" and
that appellant's [testimony] was "filled with inconsistencies" and "changes of
position."

The court denied the petition by orders dated September 25, 2019 and February 12, 2020. (CAV

at 47-49). Orlina's subsequent petition for appeal to the Supreme Court of Virginia, in which he

raised the same alleged error and that the Court of Appeals of Virginia erred in not applying the

ends of justice exception, was refused on December 17, 2020. (Orlina v. Commonwealth, Record

No. 200382).

On March 22, 2021, Orlina, proceeding pro se, filed a petition for a writ of habeas corpus

in the circuit court alleging he had been denied his right to the effective assistance of counsel.

conviction. Within that petition, Orlina raised the following claims:

A. Trial counsel failed "to correctly advise [Santos Orlina] of his right to appeal, thus
   demonstrating a conflict of interest."

B. Trial counsel, by his own admission, was "ill-prepared," and failed to present a
   "perfect argument" at the sentencing hearing, instead "speaking from his head and

heart." Trial counsel displayed a conflict of interest when he "accuse[d] his client [of] having committed the crime" during the sentencing hearing.

C. Trial counsel "failed to subpoena requested supporting witness, Donna Kerney, whose testimony would have exposed [the victim's] motive for bringing false charges against" Santos Orlina.

D. Appellate counsel presented a "dead on arrival petition for appeal without first consulting with his client" thereby depriving Santos Orlina of effective assistance of counsel on appeal.

(Orlina v. Clarke, Case No. CL21-1411). (Hab. at 7-19). The respondent filed a motion to dismiss on May 25, 2021 (Id. at 33-609), and Petitioner filed a motion for judgment. (Id. at 610-12). The respondent filed a proposed order on June 28, 2021.[1] On July 13, 2021, the circuit court dismissed Orlina's habeas petition. (Id. at 616-40). Over three months later, on or about October 28, 2021, Orlina, acting pro se, filed a Motion for Delayed Appeal and a Notice of Appeal in the circuit court, which the circuit court denied on November 16, 2021 for lack of jurisdiction.

On or about December 15, 2021, Orlina, proceeding pro se, filed a petition for appeal in the Supreme Court of Virginia. (Orlina v. Clarke, Record No. 211181). By order dated March 10, 2022, the Supreme Court of Virginia dismissed Orlina's petition for appeal because he had failed to timely file a notice of appeal in the circuit court pursuant to Rule 5:9(a)[2] and failed to timely file a petition for appeal pursuant to Rule 5:17(a)(1).[3] (VSCT at 110).

## II. Present Federal Claims

On or about April 15, 2022, Orlina, proceeding pro se, filed his current habeas petition, wherein he raises the following claims of ineffective assistance of counsel:

---

[1] The respondent a copy of the proposed order to Orlina at the Deerfield Correctional Center.

[2] Rule 5:9(a) of the Supreme Court of Virginia states in pertinent part, "No appeal will be allowed unless, within 30 days after the entry of the final judgment ... counsel for the appellant files with the clerk of the trial court a notice of appeal and at the same time mails or delivers a copy of such notice to opposing counsel."

[3] Rule 5:17(a)(1) of the Supreme Court of Virginia states in pertinent part, "Unless otherwise provided by rule or statute, in every case in which the appellate jurisdiction of this Court is invoked, a petition for appeal must be filed with the clerk of this Court ...in an appeal direct from a trial court, no more than 90 days after entry of the order appealed from."

4

A.  Mr. Orlina's trial counsel's performance fell below an objective standard of reasonableness such that his deficient performance prejudiced the defense because he failed to provide Tagalog translator for the first trial despite repeated requests to do so and thereby failed to allow the trial court to understand Mr. Orlina, including race, language, culture, and heritage of Mr. Orlina, the only non-native born U.S. citizen and non-white person in the courtroom during his trial other than the sheriff's deputy. [Dkt. No. 1 at 5].

1)  Tagalog is Petitioner's first language and in his speech some words have a different historical meaning. (8/1/18 Tr. at 26-27, 156).

2)  Detective Snell admitted that Petitioner's first language was Tagalog and that his language was "halting," but nevertheless made no accommodation for Petitioner's language challenges or communication barriers. (Id. at 155-56).

3)  This non-native English speaker told armed detectives "no" three or four times until they brow beat him with questions to get the answers they wanted. (Id. at 160-61).

4)  Both Petitioner and his wife testified that she interpreted for him all the time. (8/2/18 Tr. at 271, 312).

5)  Both Petitioner and his wife thought he needed an interpreter but his attorney said, "he could handle it." (Id. at 272).

B.  Mr. Orlina's trial counsel's performance fell below an objective standard of reasonableness such that his deficient performance prejudiced the defense because his performance prejudiced the defense because his performance demonstrates an insufficient understanding of myofascial release, the treatment modality Orlina practiced, and thereby gave the trial court no opportunity to understand the terminology Orlina used or how the complaining witness could have falsely accused despite Orlina never having touched her genitalia and never having sexually assaulted her. [Dkt. No. 1 at 7].

1)  Expert J.B. Ludwig testified about how myofascial release can evoke past trauma such that the client can reexperience that trauma in a dream like altered state of consciousness known as unwinding or release. (8/2/18 Tr. at 280, 283-86, 290, 293).

2)  Without adequate questions from his defense counsel to explain their context within the myofascial release modality, petitioner used the terms release, pelvic floor, pelvic bones, and pelvic release and described closing his eyes thus creating the false impression of sexual contact or impropriety for the court when there was none. (Id. at 335, 336, 337, 362-66, 369, 371, 377).

3)  Despite evidence of scars on the complaining witness's wrist, a history of panic attacks, and past usage of Xanax, defense counsel failed to make any inquiry about past sexual trauma in the life of the complaining witness. (8/1/18 Tr. at 60; 8/2/18 at 349).

5

4) Petitioner asks the Court to take judicial notice of <u>Myofascial Release: Healing Ancient Wounds the Renegades Wisdom</u>, by John F. Barnes, PT © 2019, the bible of myofascial release, which is the massage treatment modality he practiced.

C. Mr. Orlina's trial counsel's performance fell below an objective standard of reasonableness such that his deficient performance prejudiced the defense because his performance prejudiced the defense because his zeal to preserve his bonhomie and friendly badinage with the judge, the prosecutor, the detective, and the complaining witness clearly exceeded his obligation to zealously represent his client. [Dkt. No. 1 at 8-9].

1) Petitioner's defense attorney repeatedly allows the Commonwealth's witnesses to testify in the narrative without objection (8/1/18 at 148-53, 172-79) allows the Commonwealth Attorney to lead his witnesses without objection (<u>see, e.g.</u>, <u>id.</u> at 120-27, 142-54, 162-69) and allows the complaining witness's mother to testify to blatant hearsay without objection. (<u>Id.</u> at 174-77).

2) Petitioner's defense attorney fails to ask the complaining witness any questions about how it is physically possible for Petitioner to move his hand up her form-fitting boy shorts in one swift motion (8/1/18 Tr. at 81-88, 43, 50), the anatomical impossibility of touching her vagina and butt at the same time all the while holding this one-hundred and eighty pound woman, who exceeded his own weight, by a hand on her shoulder (<u>id.</u> at 50, 84), and the implausibility of her own testimony that she is willing to pay for a massage that caused her so much trauma. (<u>Id.</u> at 57).

3) Petitioner's defense attorney permits the Commonwealth to lead the investigating detective on the basis of their lengthy acquaintance (<u>id.</u> at 142), works to accommodate the complaining witness's work schedule (<u>id.</u> at 193), and even cuts the examination of a witness short for the convenience of the Commonwealth (<u>Id.</u> at 253) all while the petitioner stands in peril of his freedom, career, and separation from his family.

4) Despite the peril in which Petitioner finds himself, his defense attorney fails to preserve a description of his physical demonstrations on the record (8/2/18 Tr. at 326, et seq.), conflates the Petitioner's wife and complaining witness's names (<u>id.</u> at 341, 390), and jokes about his lack of preparation at sentencing. (1/14/19 Tr. at 31).

D. Mr. Orlina's trial counsel's performance fell below an objective standard of reasonableness such that his deficient performance prejudiced the defense because he failed to elicit testimony about Mr. Orilna's invocation of his right to counsel (see attached affidavit Christopher S. Orlina) at his first interrogation by the detectives, to object to Detective Snell's testimony on the basis of the invocation, or to file a motion to suppress and present argument tin support thereof on the invocation of that right prior to trial. [Dkt. No. 1 at 10].

6

1) When Petitioner was interrogated by Detectives Snell and Slomeana, Petitioner told them he needed help from a lawyer near the beginning of the interrogation. (See enclosed affidavit of Christopher S. Orlina).

2) Despite Petitioner's request for a lawyer the detectives continued to ask questions both with their holsters and firearms visible at the waists. (See Id.).

3) At the beginning of the interrogation one of them pointed at his gun and said, "Do you know what this is?" (See Id.).

4) Detective Snell questioned Petitioner with the same line of questioning, browbeating Petitioner after his invocation until the detective got the answer he wanted. (8/1/18 Tr. at 160 and See enclosed affidavit of Christopher S. Orlina).[4]

Petitioner also appears to be raising a claim that his appointed appellate counsel was ineffective because he selected the issue for appeal without "input" from Petitioner. [Dkt. No. 1 at 6, 7, 9, 10]. The claim will be designated as Claim E, and will be addressed below.

### III. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v. Greer, 481 U.S. 129 (1987). Exhaustion requires a state prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to

---

[4] The Motion to Dismiss condenses and separates petitioner's four claims and sets the same four claims out as twelve separate claims. The Court has set for the claims as they were set out in the petition and will address the claims as set forth in the petition. The Fourth Circuit recently held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard.... [and it is] the district court['s] duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. May 10, 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief."). Folkes, while recognizing that pro se litigants' pleadings are liberally construed, cautioned district courts from "alter[ing] the factual basis for a claim," 34 F.4th at 271, and assuming the role of advocate.

the Supreme Court of Virginia. See Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002); see, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

In addition, "[a[ habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). A procedural rule is adequate "if it is regularly or consistently applied by the state court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999) (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)). Further, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Such claims are simultaneously exhausted and defaulted. See Burket v. Angelone, 208 F.3d 172, 183 n.11 (4th Cir. 1999); Wise v. Williams, 982 F.2d 142, 143-44 (4th Cir. 1992) (Rule 5:9(a) is independent and adequate state bar); see also Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("failure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims").

There are only two claims raised in state habeas that Petitioner has raised in his federal petition. First, in state habeas he alleged that his counsel was not prepared for sentencing, which corresponds to a portion of federal Claim C(4). The other claim raised in state habeas that he has also raised in federal habeas alleges counsel was ineffective for not consulting with Petitioner on what issues should be raised on appeal, which the Court has designated as Claim E. Even though two portions of Petitioner's federal habeas claim were raised in the state circuit court habeas

8

proceeding, however, Claims C(4) and E are simultaneously exhausted and defaulted because Orlina did not properly exhaust those two portions of his federal habeas by properly perfecting his appeal from the circuit court's dismissal to the Supreme Court of Virginia.

After the dismissal of his state habeas petition by the circuit court, Orlina failed to file a timely notice of appeal and thereafter he failed to file a timely petition for appeal. His defaults resulted in the Supreme Court of Virginia dismissing his appeal pursuant to Rule 5:9(a) and Rule 5:17(a)(1) because the notice of appeal and the petition for appeal were not timely filed. (VSCT at 110). The Fourth Circuit has held that a procedural default under Rules 5:9(a) or 5:17(a)(1) is an adequate and independent state law ground that bars federal habeas review of claim. See O'Dell v. Netherland, 95 F.3d 1214, 1244 (4th Cir. 1996) (holding "that the Virginia Supreme Court's application of Va. S. Ct. Rule 5:17(a)(1) was also an independent state ground sufficient to bar federal habeas review."); Spencer v. Murray, 5 F.3d 758, 761 (4th Cir. 1993) (Rule 5:17(a)(1) is an adequate and independent state ground that bars federal habeas review of claims raised by a federal petition "in his state habeas appeal ... unless those claims were otherwise exhausted by being raised on direct appeal"); Wise v. Williams, 982 F.2d 142, 143-44 (4th Cir. 1992) (finding that Rule 5:9(a) is an independent and adequate bar); Coleman v. Thompson, 895 F.2d. 139, 143 (4th Cir. 1990) ("The district court properly concluded that the failure to comply with Rule 5:9(a) was an adequate ground to apply the bar of procedural default."). Orlina's failure to properly perfect his appeal of the circuit court's dismissal of his state habeas petition bars federal review of Claims C(4) (portion alleging counsel was not prepared for sentencing) and Claim E.

The remaining federal claims, Claims A, B, C (with the exception of the allegation Orlina's trial counsel was not prepared for sentencing (hereinafter "C"), and D, were not raised

9

in the circuit court or in the Supreme Court of Virginia during the state habeas proceedings. Orlina acknowledges he did not raise the federal claims in his prior state habeas petition [Dkt. No. 1 at 6, 7, 9, 10], and that none of his claims had been raised in the Supreme Court of Virginia. [Id. at 12]. Orlina cannot return to state court to exhaust these claims because under Virginia Code § 8.01-654(A)(2), Virginia's statute of limitations for state habeas petitions, Orlina had two years from the date of his conviction (January 15, 2019) or one year from the end of his direct appeal (December 17, 2020) to raise Claims A, B, C, and D. The time for him to raise these claims in state court has expired, and therefore any subsequent state habeas petition would be barred as untimely under Virginia's habeas statute of limitations and as successive under Virginia Code § 8.01-654(B)(2). A dismissal under either state statute is an independent and adequate state law grounds for procedural default. See Clagett v. Angelone, 209 F.3d 370, 379 (4th Cir 2000) (finding Virginia's limitations period and successive petition bar are independent an adequate state grounds); Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); see, e.g., Baker v. Clarke, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) ("many courts have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted); see also Gray, 518 U.S. at 162 (holding that claims barred by Virginia Code § 8.01-654(B)(2) are not reviewable in federal habeas proceedings). Claims A, B, C, and D are therefore simultaneously exhausted and defaulted. See Baker, 220 F.3d at 288; Clagett, 209 F.3d at 378-79. Consequently, all of the claims Orlina has raised in his federal petition are defaulted.

*A. Cause and Prejudice*

Federal courts may not review defaulted claims absent a showing of cause and prejudice

or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255,

260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective

assistance of counsel, (2) a factor external to the defense which impeded compliance with the

state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722,

753-54 (1991). 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not

consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350,

1359 (4th Cir. 1995). Orlina does not argue his claims are novel such that he could not raise them

in the state court, and his allegations of ineffective assistance of counsel will be addressed below.

See, infra at 15-32.

Initially, Orlina's assertion that he is unfamiliar with the legal system and has limited

"English skills" [Dkt. No. 1 at 5, 7, 9, 10], are not sufficient grounds to excuse his procedural

defaults. See Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004) ("unfamiliarity with the

English language is insufficient to establish cause to excuse his procedural default because such

alleged unfamiliarity is not 'external to [his] defense.'") (citation omitted); Vasquez v. Lockhart,

867 F.2d 1056, 1058 (8th Cir. 1988) (finding that a "lack of familiarity" with English and the

American court system are not sufficient to establish cause for procedural default); Herrera v.

Clarke, Case No. 1:19cv1301, 2021 U.S. Dist. LEXIS 79747, *17 (E.D. Va. Apr. 22, 2021)

(petitioner's "unfamiliarity with the English language is insufficient to establish cause to excuse

his procedural default because such alleged unfamiliarity is not external to his defense"), appeal

dismissed, 2022 U.S. App. LEXIS 25582 (4th Cir. Sept. 13, 2022); Guerera-Sandoval v.

Johnson, Case No. 2:09cv238, 2010 U.S. Dist. LEXIS 48697, *13 (E.D. Va. Apr. 2, 2010)

11

("Language barriers and unfamiliarity with the legal system are not external factors sufficient to excuse procedural default."), adopted by, 2010 U.S. Dist. LEXIS 48698 (E.D. Va. May 18, 2010). Moreover, despite Orlina's assertion of difficulty with the English language, the record indicates that his "English" was more than adequate and that he understood not only the English language but was familiar with the legal system as well.

Although Orlina filed an affidavit with his federal habeas petition that asserts that he becomes "exhausted" after five to ten minutes when he has to focus on someone talking in a language other than Tagalog, he also admits in the same affidavit that his "English skills were adequate for some situations and settings." [Dkt. No. 1-1 at 1]. His admission regarding the adequacy of his English skills is borne out by the plea colloquy in which he stated he understood the trial court's questions and was ready for trial; as wells his testifying on direct for 43 minutes, and then after a sort break, testifying on cross-examination for over 45 minutes, followed by a brief re-direct by his counsel. (8/2/18 Tr. at 308-386).[5] Indeed, when testifying, Orlina stated that when he first came to the United States in 2008, he could not speak English "fluently" but at the time of trial "now I can." (8/2/18 Tr. at 312).[6] Orlina does not identify any portion of the trial transcript that he did not understand.[7]

In addition, shortly after sentencing, Orlina filed two letters with the circuit court. The first, received on February 11, 2019, complains about several matters related to his trial, including allegations that the victim suffered no physical harm or injuries, no positive DNA

---

[5] The court reporter noted the start and stop times during Orlina's testimony (10:31 a.m. through 11:14 a.m.; and 11:28 a.m. through 12:30 p.m.). (8/2/18 Tr. at 308, 346; 346, 393). There was an eight-minute recess from 12:13 p.m. through 12:21 p.m. for the trial judge to confer with counsel (id. at 384), and the re-redirect lasted only two pages. (Id. at 391-92).

[6] Orlina did state that sometimes he could not understand someone if they were talking "really fast." (Id.).

[7] The exhibits that the respondent filed in the state habeas proceedings included a copy of the trial transcript, and respondent certified that he sent a copy of all of his exhibits to Orlina. (Hab. at 60, and Resp. Ex. No. 6).

evidence, the "police officers destroy[ed] evidence," and his "attorney did not perform well during [his] trial." (CCT at 128). The second letter, received on February 13, 2019, repeated the same allegations contained in the February 11, 2019 letter, and added that he had "new testimony," "newly discovered evidence," and referenced motions "to alter or amend judgment." (Id. at 131). Both letters were written in English and the accompanying letters were properly addressed. Orlina also filed a form notice of appeal on February 13, 2019, which contained the handwritten assertions noting that he was "requesting court appointed counsel" because he was "indigent." (Id. at 132). The record establishes that Orlina was able to communicate in and understand English.

Accordingly, Orlina has failed to demonstrate that an objective factor, external to his defense, impeded him from raising his claims at an earlier stage. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006) (quoting Basden v. Lee, 290 F.3d 602, 618 (4th Cir. 2002)) (holding that petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation'").

*B. Actual Innocence*

Orlina also appears to assert he is "actually innocent," which would satisfy the "fundamental miscarriage of justice" exception that applies where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1986). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas," however, "are rare." Id. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).[8]

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324 (emphasis added). Assessment of a claim of actual innocence by a federal habeas court, however, "is not limited to such evidence." House, 547 U.S. at 537. Instead, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" Id. at 538 (quoting Schlup, 513 U.S. at 327-28)). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" Id. (quoting Schlup, 513 U.S. at 329)). Here, Orlina provides no new evidence and has failed to a demonstrate he is actually innocence.

C. *Martinez v. Ryan*, 566 U.S. 1 (2012).

Lastly, although not raised by Orlina, the Court finds that Orlina's ineffective assistance of counsel claims do not satisfy the "narrow exception" recognized in Martinez, which would allow the review of a defaulted claim. Id. at 16. Martinez held in relevant part that "a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if ... the ineffective-assistance-of-trial-counsel claim is a substantial one." Fowler v. Joyner, 753 F.3d 446, 461 (4th

---

[8] The Fourth Circuit has held that an actual innocence claim "does not by itself provide a basis for relief," but instead serves as a "'gateway through which a habeas petitioner must pass' to have his substantive claims heard on the merits." Teleguz v. Pearson, 689 F.3d 322, 327-28 (4th Cir. 2012) (quoting Sibley v. Culliver, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) and Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010)). It is a narrow exception "where a constitutional violation has probably resulted in the conviction of one who is 'actually innocent' of the substantive offense." Richmond v. Polk, 375 F.3d 309, 323 (4th Cir. 2004) (citation omitted).

Cir. 2014) (citation and quotation marks omitted). Because his defaulted ineffective assistance of counsel claims are not "substantial" as required by Martinez, he has not met his burden to show cause for the default. 566 U.S. at 14 (explaining petitioner "must ... demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit") (citation omitted).

Whether a claim is substantial is measured under familiar principles governing claims of ineffective assistance set forth for in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. Id. at 687. In addition, "trial strategy decisions are not evaluated 'through the distorting effects of hindsight.'" Winston v. Kelly, 592 F.3d 535, 544 (4th Cir. 2010) (citations omitted). "[D]ecisions regarding trial tactics and strategy, such as ... whether and how to cross-examine a witness ... are the exclusive province of the attorney, after consultation with the client .... A claim of ineffective assistance of counsel does not open the flood gates to second guessing the tactics of trial lawyers." Hansford v. Angelone, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002).

### 1. Claim A

In Claim A, Orlina alleges that his trial counsel failed to seek the assistance of a Tagalog interpreter his "despite repeated requests to do so." [Doc. 1 at 5]. Because of the absence of an interpreter, he claims that the trial court did not have the opportunity to "fully understand Mr. Orlina, including the race, language, culture, and heritage of Mr. Orlina, the only non-native born U.S. citizen and the only non-white person in the courtroom during his trial other than the sheriff's deputy." [Doc. 1 at 5].

Orlina fails to demonstrate that counsel's actions were unreasonable or that the outcome of his trial would have been different had an interpreter been present. Prior to the beginning of trial, the circuit court engaged in a standard colloquy, asking Orlina various questions. (Tr. 8/1/18 at 4-8). Among those questions was whether Orlina "fully underst[ood] the charge against [him]," whether he "discussed that charge at length" with his trial counsel, and whether he was ready for trial. (Id. at 5-6). Orlina answered, "Yes, Your Honor" to each question. (Id. at 5). Moreover, when the circuit court asked whether he understood all of the court's questions, Orlina responded, "Yes, Your Honor." (Id. at 7). At no point did Orlina indicate he needed the assistance of an interpreter.

Significantly, Orlina testified at length in his own defense for approximately 90 minutes. (Tr. 8/2/18 at 308-92). During his testimony, Orlina described his immigration history from the Philippines to the United States, and did not indicate to trial counsel or to the court that he had difficulty understanding counsel's questions or needed an interpreter. (Id. at 311-12). In fact, during his testimony, Orlina testified that his first language was Tagalog and explained the term "inside," as that term is understood in his native language, was different than its use in English. Orlina testified that the English word "inside" in Tagalog "mean[s] to us is inside of your soul, inside of your heart." (Id. at 312-13). On cross-examination by the prosecutor, Orlina did not hesitate to clarify matters before answering if he did not understand the question. For example, while a taped conversation between Orlina and the victim was being played, Orlina asked the prosecutor to pause the tape in order for him to explain what he was doing at the time of the telephone call and explain his statement on the tape. (Id. at 376, 380). Lastly, Orlina testified that when he first came to the United States in 2008, he could not speak English "fluently," but that at the time of trial "now I can." (Id. at 312). The record demonstrates Orlina did not have trouble

16

explaining his understanding of English terms or expressing himself during the trial, and shows conclusively that he understood what was going on during trial.[9] See Gallo-Vasquez v. United States, 402 F.3d 793, 799 (7th Cir. 2005) (holding failure to use interpreter not ineffective assistance where record indicated petitioner understood English); see also United States v. Martinez, 120 F. Supp. 2d 509, 514-15 (W.D. Pa. 2000) (holding counsel was not ineffective for failing to ensure an interpreter was present during meetings with defendant, and for not providing defendant with written translations of court documents, where record reflected defendant's ability to communicate and comprehend the proceedings in English).

Trial counsel's conclusion that Orlina did not need a translator for the trial proceedings was not unreasonable and is supported by the trial record and Orlina's post-conviction letters to the trial court. In addition, Orlina's argument is speculative, at best, and he identifies no specific prejudice to support his claim. Orlina also fails to provide any evidence that the circuit court failed to fully understand Orlina because there was no interpreter present at trial. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (habeas petitioner must come forward with some evidence claim might have merit; unsupported, conclusory allegations are insufficient); cf. Pacheco v. Aboutanaa El Habti, 48 F.4th 1179, 1192 (10th Cir. 2022) (finding no prejudice to support a claim of ineffective assistance because "although the interpreter was unqualified, [the petitioner] was not prejudiced because no specific mistranslations by the interpreter were identified"). Finally, Orlina fails to demonstrate that even if an interpreter were present, that

---

[9] Orlina was an active participant during his trial and asked the prosecutor on several occasions to rephrase or clarify a question because he did not understand it. (8/2/18 Tr. at 348-49, 359-60). Orlina was not intimidated by the trial and asked the trial judge's permission to stand up to demonstrate how he had his hands at point in time during the victim's massage to clarify what he was doing at the point in time when the victim said "no." (Id. at 364). Orlina had also attended massage school in 2008 and graduated in 2010. (Id. at 311). In addition, Orlina provided the information to the probation officer for the pre-sentence report in a "face-to-face interview" and via a handwritten "background information" sheet Orlina completed. (CCT, Pre-Sentence Report at 5).

there was a reasonable probability of his acquittal. Claim A is not a substantial claim under Martinez.

### 2. Claim B

Claim B alleges that trial counsel failed to sufficiently understand "myofascial release," the type of massage treatment practiced by Orlina. [Doc. 1 at 7]. Orlina argues that because of trial counsel's lack of understanding, the circuit court had "no opportunity to understand the terminology" used by Orlina during his trial testimony or understand how the complaining witness "could have falsely accused Orlina despite him never having touched her genitalia and never having sexually assaulted her." [Doc. 1 at 7]. Orlina alleges trial counsel did not ask the correct questions, did not ask the victim about past sexual trauma, and asks this Court to take judicial notice of a book published the year after his trial.

The record demonstrates that trial counsel provided an expert to explain myofascial massage and the relevant terms to assist the trial court in understanding Orlina's massage treatment practice, and counsel used other testimony to that end as well. Trial counsel asked the victim her understanding of "myofascial release" and asked whether she understood it to mean "a release of emotions, the release of trauma in certain people, the release of prior memories in an attempt to have the mind and the body heal[.]" (Tr. 8/1/18 at 74). The victim agreed. (Id. at 74). The victim also testified that when she expressed concern during a treatment prior to August 15, 2017 incident because Orlina's finger went under the waistband of her underwear on her hip when she was being treated for an issue with her jaw. In response, Orlina explained the "interconnectivity" of different parts of the body and showed her a book related to that and the victim accepted his explanation after seeing the book. (Id. at 77, 79). The victim also described Orlina as "gentle" and "kind." (Id. at 78).

Trial counsel qualified a witness Ludwig as an expert in myofascial release therapy, who testified on Orlina's behalf without compensation and was only reimbursed for his travel expenses. (Id. at 279, 298). Ludwig described the technique of myofascial release therapy for the trial court. (Id. at 279-82). Ludwig specifically noted that the unwinding process of myofascial release allows the patient to "reliv[e]" a past trauma "they have gone through in a way that they can process it an heal." (Id. at 282, 283). The past trauma can be something the patient has forgotten, and that he would want to know if a client had experienced "panic attacks" in the past because that indicates a possible "hormonal issue," or past abuse. (Id. at 285). Ludwig noted he always keeps his "eyes open" during unwinding because it was important to determine if the patient is trying to "halt" the treatment during the unwinding why they are reliving the past trauma because "it's too much" he would end the treatment. (Id. at 286, 306). If the treatment ended before the unwinding was complete, he would advise the patient to come back to finish reliving the past trauma, "they need to experience it to move beyond it." (Id. at 286). Ludwig also testified that during the unwinding, the patient's "body is physically in front of [him], but their consciousness is somewhere else" and that they may have "visions and images flashing through their head" while their body is in a different modality" and "is moving into positions that it was in when the trauma occurred." (Id. at 289, 290).

Ludwig also testified about traumas specific to women — childbirth, C-section, horseback riding, violent intercourse or abuse, and menstrual cycle imbalances. (Id. at 293). Ludwig indicated that there were internal and external techniques, but that he only practiced the external techniques and did not perform internal body-cavity techniques. (Id. at 294). Ludwig noted that a shoulder issue could require him to work on a patient's hips as well due to the interconnectivity, and he would talk to a patient before massaging an area near their genitals. (Id.

at 282, 302). Ludwig also noted that a massage or physical therapist cannot enter a body cavity without a prescription from a medical doctor. (Id. at 303). Ludwig noted "pelvic massage" is "internal work," and "you are not massaging." (Id. at 304). Pelvic massage involves "sustained pressure, whether its constrained or traction" and does not usually involve "moving back and forth." (Id.).

The trial court, therefore, did have exert testimony as to the definition of "myofascial release" as described by Orlina in his petition. [Doc. 1 at 7]. In addition, Orlina also testified about his specific massage practice and even provided a demonstration for the trial court. (Tr. 8/2/18 at 329-34). Orlina agreed with Ludwig's description of myofascial release and testified that Ludwig "had done a pretty good job of explaining it." (Id. at 320).[10] Orlina had an expert, trained in part by the "authority" on myofascial therapy, and he is not entitled to the expert of his choice. Cf. Ake v. Oklahoma, 470 U.S. 68, 83 (1985) ("indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own"); see also Walton v. Angelone, 321 F.3d 442, 464 (4th Cir. 2003) (no constitutional right to insist on the appointment of any particular expert); Wilson v. Greene, 155 F.3d 396, 401-02 (4th Cir. 1998) (holding that the Constitution does not entitle a criminal defendant to the effective assistance of an expert witness).

---

[10] Ludwig testified that John F. Barnes, the author of a book Orlina seeks to have the Court take judicial notice of, taught myofascial therapy for over forty years, Ludwig had taken a class from him, and Ludwig had five or six book written by Barnes, who is the "authority of his style of myofascial release." (8/2/18 Tr. at 276).The Court declines to take judicial notice of an entire book in support of a claim of ineffective assistance of counsel. The record has sufficient information about myofascial release. In addition, assuming the book would qualify as a "learned treatise," Federal Rule of Evidence 803(18) "permits the admission of learned treatises as substantive evidence, but only when 'an expert is on the stand and available to explain and assist in the application of the treatise ....'" Tart v. McGann, 697 F.2d 75, 78 (2d Cir. 1982). In addition, Rule 803(18) limits admissibility to specific "statements" or a "statement," and not an entire book. The quotes from the book noted in his response were covered by Ludwig's testimony, which is already in the record. Lastly, the book Orlina asks the Court was published after trial.

Trial counsel marshalled the evidence he had introduced on direct and through cross examination into a cogent argument as to why the trial court should find Orlina innocent. In addition to Orlina's lack of a criminal record, his cooperation with the police, and the numerous character witnesses who testified on his behalf as to his honesty, integrity, reputation for appropriate behavior with clients, he presented an argument that explained why the victim's testimony should be deemed not credible. Counsel noted the inconsistencies in the victim's testimony about how many times she had seen Orlina prior to August 15, 2017, the problems of a delay in reporting, no DNA or evidence of physical trauma, and the victim's offer to pay before leaving on August 15, 2017. (Id. at 406-10). Counsel specifically noted the victim's history of anxiety related problems and muscle issues, panic attacks, and a recent emotional trauma of breaking her engagement, which included her roommate testifying that the victim was "very upset" by the break-up. (Id. 407-08). Trial counsel linked the victim's history to the unwinding and argued that when she came out of the unwinding she panicked when she found Orlina's hand on her thigh. (Id. at 411). Counsel related the victim's reaction to Ludwig's testimony about unwinding, in which Ludwig testified the effects from the unwinding can go on for days. (Id. at 417). Counsel noted that shortly after the incident, the victim did not tell him Orlina slid his fingers inside her but that he had "tried to slide his fingers inside her" ( 8/1/18 Tr. at 117, 8/2 18 Tr. at 417), and argued the discrepancy between her testimony and the statement was due to the influence of the unwinding and the victim's confused and emotional state.

Orlina also fails to provide any support for this claim. See Nickerson, 971 F.2d at 1136; see also Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir.

1990) (petitioner must allege "what an adequate investigation would have revealed."); <u>Anderson v. Collins</u>, 18 F.3d 1208, 1221 (5th Cir. 1994) ("brief and conclusory allegations" are not sufficient to demonstrate that counsel's investigation was deficient or prejudicial under <u>Strickland</u>).[11] The record establishes that counsel built a viable defense, that used the expert testimony from Ludwig, and Orlina's arguments do not establish his efforts were unreasonable. Counsel "need not raise every possible claim to meet the constitutional standard of effectiveness." <u>United States v. Mason</u>, 774 F.3d 824, 828 (4th Cir. 2014), and Counsel's strategy was not ineffective simply because he could have presented the expert testimony in another fashion. <u>Williams v. Kelly</u>, 816 F.2d 939, 950 (4th Cir. 1987) (counsel is not ineffective "merely because he overlooks one strategy while vigilantly pursuing another"). The "failure of the strategy to produce an acquittal does not mean that it was incompetent." <u>Jackson v. United</u>

---

[11] Petitioner alleges in support of his claim that counsel did not ask the victim "about past sexual trauma," but he has not established that the victim experienced any past sexual trauma. Orlina's wife submitted an affidavit in support of his response stating she saw a post online after his trial and sentencing that indicating that the victim "had been sexually assaulted while in college." [Dkt. No. 16-1]. The alleged comment provides no cite for reference, and in any event is at least double hearsay, if not more. <u>See</u> <u>Greiner v. Wells</u>, 417 F.3d 305, 325-26 & n.27 (2d Cir. 2005) (stating that double-hearsay in an affidavit could not be used to demonstrate ineffective assistance of counsel in habeas proceedings); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1056 (10th Cir. 2001) (finding district court did not abuse its discretion in refusing to consider hearsay affidavits by investigators); <u>Burket v. Angelone</u>, 208 F.3d 172, 181, 185-86 (4th Cir. 2000) (finding that federal habeas court could not consider an unexecuted affidavit and an affidavit based on hearsay because the Supreme Court of Virginia's finding that these documents were inadmissible in state habeas proceedings was not "so extreme as to result in a denial of a constitutionally fair proceeding"); <u>Grisby v. Blodgett</u>, 130 F.3d 365, 368 (9th Cir. 1997) (stating, in habeas case, "hearsay affidavits do not meet the requirement of Fed. R. Civ. P. 56(e)); <u>see also</u> <u>Pavao v. Cardwell</u>, 583 F.2d 1075, 1077 (9th Cir. 1978) (rejecting false-testimony claim where the proffered evidence of falsity was based on double hearsay); <u>D'Ercole v. United States</u>, 361 F.2d 211, 212 (2d Cir. 1966) (affidavit containing hearsay statements could not support habeas petition). In addition, defense counsel had made a strategic decision not to attack the victim and was able to demonstrate her past history of physical issues, panic attacks and her recent break-up with her fiancé in support of the defense based upon the unwinding. <u>See</u> <u>Sallie v. N. Carolina</u>, 587 F.2d 636, 640 (4th Cir. 1978) (finding cross-examination is a matter of trial strategy that cannot be second-guessed in a collateral habeas proceeding); <u>see also</u> <u>Hoots v. Allsbrook</u>, 785 F.2d 1214, 1219 (4th Cir. 1986) ("[C]ourts considering a claim of ineffective assistance should not second-guess strategic decisions of counsel"); <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir.1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature" and do not ordinarily support an ineffective assistance claim). <u>Higgs v. United States</u>, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (deciding "what questions to ask and how much time to spend on a particular witness .... are precisely the types of tactical decisions a court is not supposed to second guess."). It was reasonable for trial counsel not to question the victim about past sexual trauma as those questions would have likely been objectionable. <u>See</u> Va. Code § 18.2-67.7 (absent an exception, general reputation or opinion evidence about a victim's past sexual conduct is not admissible). Orlina does not provide evidence of the alleged past abuse, or on what basis that evidence would be admissible.

States, 473 F. Supp. 2d. 640, 646 (D. Md. 2006). Claim A is not a substantial claim under Martinez.

### 3. Claim C

In Claim C, Orlina alleges his attorney did not "zealously" represent him because he was too friendly with the judge, the prosecutor, the detective, and the complaining witness; he did not object to leading questions or hearsay; he did not object to narrative answers by Snell and the victim's mother;[12] his cross-examination of the victim; he accommodated prosecution witnesses and cut his own examination "short;" he did not preserve Orlina's physical demonstration; he conflated his wife's name with the victim's; and he joked about not preparing for sentencing.

"[W]hether and how to examine a witness is quintessentially a matter of trial tactics not subject to second-guessing on collateral review." Sallie, 587 F.2d at 640; see also United States v. Clayborne, 509 F.2d 473, 479 (D.C. Cir. 1974) ("Knowing when not to cross-examine an adverse witness is the art of cross-examination at its highest"); Higgs v. United States, 711 F. Supp. 2d 479, 515 (D. Md. 2010) ("Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess.").

Here, trial counsel's choices in deciding how to cross-examine the victim was a matter of trial tactics. "Trial counsel's decisions regarding the selection of the best defense plan ... involved tactics well within professionally reasonable conduct that should not be second-guessed by this Court under Strickland." Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995); see DeLozier

---

[12] Snell was explaining his interview with Orlina, which Orlina testified lasted approximately two hours. (8/2/18 Tr. at 341). It is not surprising that Detective Snell testified without interruption for five pages. (8/1/18 Tr. at 148-53). Similarly, the victim's mother testified in a mainly narrative manner about her interactions shortly after the incident when she was asked, without objection, to explain her initial phone call with the victim and then asked what happened over the next few days. (Id. at 174-79).

v. Sirmons, 531 F.3d 1306, 1326 (10th Cir. 2008) ("[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy"); Nersesian, 824 F.2d at 1321 ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature."). Trial counsel is not ineffective for adopting a trial strategy that avoids overly aggressive cross-examination of "a victim in order not to appear" belligerent and unsympathetic. See U.S. ex rel. Hawthorne v. Cowan, 224 F. Supp. 2d 1178, 1194 (N.D. Ill. 2002).

Trial counsel's cross-examination of the victim was reasonable. First, he established that the victim had received multiple massages from Orlina before the massage which prompted her to call police, and that the victim had been incorrect in how many previous times she had been to Orlina for treatment (Tr. 8/1/18 at 72-73), and admitted that Orlina had touched the area around her pelvic bone previously. (Id. at 77). Trial counsel questioned her about her failure to call the police immediately after leaving the massage salon (Id. at 80), and asked her why her statement on the stand was slightly different than the statement contained in the police report about Orlina's hand going under her underwear and how long the assault lasted. (Id. at 81-89). Counsel was able to point out inconsistencies in the victim's testimony, and used her roommate to impeach her. See, supra at 21-22.

"Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997). Where trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim. Cardwell v.

Netherland, 971 F. Supp. 997, 1019 (E.D. Va. 1997). As such, counsel's cross-examination was reasonable, and Orlina fails to satisfy the first prong of Strickland.

Orlina's allegation that counsel was not zealous enough because he was cordial to the judge, the prosecutor, the detective, and the complaining witness is conclusory in nature. See Nickerson, 971 F.2d at 1126; see also Oliver v. Braxton, No. 01-349-AM 2001 U.S. Dist. LEXIS 27097, *18, at *7 (E.D. Va. Nov. 8, 2001) ("It is elementary that a petition of this nature must allege facts and that mere conclusions or opinions of the pleader will not suffice to make out a case.") (quotation and internal citation omitted), appeal dismissed, 37 F. App'x 613 (4th Cir. 2002). The record establishes that trial counsel reasonably and actively defended Orlina throughout the trial. He cross-examined the Commonwealth's witnesses and sought to discredit the victim. (Tr. 8/1/18 at 82-86). During the motion to strike, trial counsel questioned the failure of the police to record their interview with Orlina. (Tr. 8/1/18 at 184). He summoned ten character witnesses, including several former massage clients, who testified to Orlina's reputation for being truthful and honest. (Tr. 8/1/18 at 195-98, 206, 213, 219, 229-30, 235). One of his former clients testified that Orlina "helped me in so many different ways." (Tr. 8/1/18 at 224). Many of them testified that he did not have a reputation for being sexually inappropriate. (Tr. 8/1/18 at 219, 224, 230). One, a law professor, testified that Orlina "is known for his appropriate boundaries." (Tr. 8/1/18 at 233-35). Orlina testified, at length, in his own defense, and denied putting his hands or fingers in the victim's vagina. (Tr. 8/1/18 at 325). At the end of the defense evidence, trial counsel made a second motion to strike, arguing that the evidence did not support the charge. (Tr. 8/2/18 at 396). Trial counsel argued that there was "inconsistency" in the reporting, in the police report, and when balanced with the evidence of his good character, the evidence was not sufficient. (Tr. 8/2/18 at 401-02). In his lengthy closing, trial counsel again

discussed the particular massage therapy performed by Orlina and suggested that "the context to this case," which involved that specific massage discipline, created reasonable doubt as to the credibility of the victim. (Tr. 8/2/18 at 406-19).

Notably, the trial record demonstrates that trial counsel's performance earned him a compliment from the trial judge. At the end of trial, the trial court aptly stated "I have a great deal of respect for all of the attorneys in this case and their adversarial inference with respect to their clients. In particular, I can tell you that no one has more respect for Mr. Morecock because of his civility and professionalism." (Tr. 8/2/18 at 425). Orlina fails to demonstrate that had counsel acted in a different manner that the result of his trial could have been different.

Orlina's allegations about not objecting to leading questions or interrupting a narrative answer are meritless. "It is well established that failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under Strickland," Humphries v. Ozmint, 397 F.3d 206, 234 (4th Cir. 2005) (collecting cases), and a "failure to object to leading questions and the like is generally a matter of trial strategy as to which we will not second guess counsel." Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); see Henderson, 118 F.3d at 1287 ("The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."); Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996) ("a reviewing court must be 'highly deferential' in scrutinizing trial counsels' tactics" such as when to make objections); Flores v. Keane, 211 F. Supp. 2d 426, 441 (S.D.N.Y. 2001) ("the decision of any trial attorney to object to individual questions (e.g. as 'leading') is 'evidently tactical,' and a court may not "second-guess the lawyer's on-the-spot decisions."); see also United States v. Pedigo, 12 F.3d 618, 623 (7th Cir.

1993) ("Failing to object to leading questions may be a matter of trial tactics and strategy.").

Burke v. United States, 261 F. Supp. 2d 854 (E.D. Mich. 2003), summarized why a trial attorney

is not ineffective for failing to object to leading questions.

> Petitioner is not arguing that the testimony obtained through use of leading
> questions would have been inadmissible had it been elicited through non-leading
> questions. Rather, these questions posed by the prosecution could have simply
> been rephrased. In addition, trial counsel could have refrained from objecting in
> order to avoid emphasizing damaging testimony. See United States v. Bosch, 914
> F.2d 1239, 1246 (9th Cir. 1990). See also Burnett v. Collins, 982 F.2d 922, 930
> (5th Cir. 1993) ("The trial transcript reflects that defendant's counsel did not make
> any objections and that the prosecution from time to time did ask leading
> questions. However, failure to object to leading questions and the like is generally
> a matter of trial strategy as to which we will not second guess counsel.")

261 F. Supp. 2d at 861 (footnote omitted); see also United States v. Bosch, 914 F.2d. 1239, 1246

(9th Cir. 1990) (appellant failed to show that testimony would not have been admissible if not

elicited through leading questions). The same presumption of effectiveness attaches to not

interrupting a witness who's answer to a question is long because the witness needs to explain, in

detail, the answer to the question. See Sallie, 587 F.2d at 640 ("[reasonableness] standard not

intended to promote judicial second-guessing on questions of strategy as basic as the handling of

a witness"); see also United States v. Jackson, 546 F.3d 801, 814 (7th Cir. 2008) ("[D]eciding

what questions to ask a prosecution witness on cross-examination is a matter of strategy"); Dows

v. Wood, 211 F.3d 480, 487 (9th Cir. 2000) ("[C]ounsel's tactical decisions at trial, such as

refraining from cross-examining a particular witness or from asking a particular line of

questions, are given great deference ...."). [13]

---

[13] Assuming the victim's mother's testimony contained hearsay, if counsel had objected, the evidence would have
simply come in on rebuttal, because the mother was relating primarily prior consistent statements because Orlina
impeached the victim; and also the "recent complaint" exception to the hearsay rule that allows admission of a
victim's out-of-court complaint, not as independent evidence of the offense, but "to corroborate the victim's
testimony." Mitchell v. Commonwealth, 25 Va. App. 81, 85, 486 S.E.2d 551, 553 (1997) (discussing prior
inconsistent statement exception and the recent complaint exception in Virginia Code § 19.2-268.2). Moreover,
Orlina fails to demonstrate that even if trial counsel objected, that the outcome of his trial would have been any
different. The testimony itself was not objectionable and, at best, the prosecutor would have just had to rephrase and

Orlina alleges that trial counsel failed to "preserve a description of his physical demonstrations on the record," worked to accommodate the complaining witness's work schedule, cut his examination of a witness short, and conflated the names of the petitioner's wife and the complaining witness. [Doc. 1 at 9].[14] None of these assertions satisfy the requirements of Strickland to demonstrate ineffective assistance of counsel. As stated previously, conclusory assertions, standing alone, are insufficient to warrant habeas relief. See Nickerson, 971 F.2d at 1126. Orlina's allegations due not state a claim under either prong of Strickland.

Orlina's allegations of ineffective assistance with regard to the manner in which counsel conducted himself at trial by being cordial to witnesses and others, and the manner in which he examined witnesses, do not state a claim of ineffective assistance of counsel under either prong of Strickland, much less a substantial claim that would satisfy Martinez.

### 4. Claim D

In Claim D, Orlina claims his trial counsel should have objected to Detective Snell's testimony because Orlina invoked his right to counsel during the interview at his office on August 20, 2017, and moved to suppress his statements. [Doc 1 at 10]. Orlina fails to provide a basis for an objection, particularly where the evidence demonstrated that Orlina was not in custody when he voluntarily spoke with Detective Snell inside his massage business. (Tr. 8/1/18 at 145-46). Orlina relies on his own sworn statement, which he attached to this habeas petition, as proof that the detective continued to question him despite Orlina's request for counsel. [Doc. 1

---

ask additional questions. In addition, Orlina elected to have a bench trial and trial judges are expected to set aside inadmissible evidence when reaching a verdict. See Harris v. Rivera, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Therefore, Orlina fails to show that even if his trial counsel objected as he now suggests, that he would have been acquitted. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (counsel is not ineffective for failing to file frivolous motions).

[14] The record contains a detailed description of Orlina's version of what occurred during the treatment he provided on August 15, 2017.

at 10, Doc. 1-1 at 2-3]. He claims that one of the detectives pointed to the firearm holstered at his waist and asked Orlina, "Do you know what this is?" [Doc. 1-1 at 2-3]. Orlina's claim is negated by his own trial testimony.

At his trial, Orlina testified that after the police came to his house, Orlina was not aware of who Snell and the other officer were when they "banged" on his door, and did not know they were police officers at first. Orlina testified that since he did not know who they were, he invited them to his office across the street. (Tr. 8/2/18 at 340-41). Once there, in explain who they were and why they were there, Snell pointed at his weapon and that is when Orlina saw his badge. Orlina described the officers as "good people," "kind people." (Id. at 386). Other than banging on his door, Orlina testified the officers were not "rude or aggressive with [him]." (Id.). Orlina then sat down with them, told him he would "cooperate," and that they could ask him "whatever [they] want[ed] to." (Id. at 340, 387).

Detective Snell testified that he first spoke with Orlina inside Orlina's massage business. (Tr. 8/1/18 at 146). Orlina was not in custody, and the interview was voluntary. (Id. at 146-47). When prompted by trial counsel, Orlina testified that he did not have "any hesitation to cooperate with them" and that he spoke with the detectives for about two hours. (Tr. 8/2/18 at 341). Orlina testified he had listened to Snell's testimony and testified that Snell had "le[ft] out" the fact that Snell kept repeating the same questions and Orlina continued to tell him he "didn't do it." (Id. at 343). Orlina, however, never mentioned either that he invoked his right to counsel or that a detective motioned to a firearm other than in explaining that he was a police officer. (Id. at 343, 386).

In order to file a motion to suppress a statement, the statement had to have been made by a defendant while he was in custody. "When determining whether an interrogation is custodial

29

for purposes of Miranda [v. Arizona, 384 U.S. 436 (1966)], a court asks whether, under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest." United States v. Warren, 774 F. App'x 778, 781 (4th Cir. 2019) (citation omitted). Orlina, while unsure of who the two men were, invited them across the street to his office and once at the office the two men identified themselves. The identification involved pointing to his weapon at which time Orlina saw his badge.[15] It was after this point in time that Orlina agreed to cooperate, answer whatever questions they had, and then talked with the officers for two hours before they and Orlina went home. The record does not establish that Orlina was in custody and his counsel had no basis upon which to file a motion to suppress. See Moody, 408 F.3d at 151 (counsel is not ineffective for failing to file a frivolous motion). Claim D does not state a claim of ineffective assistance of counsel under either prong of Strickland, much less a substantial claim that would satisfy Martinez.

### 5. Claim E

Finally, Orlina alleges that appellate counsel failed to consult with him prior to selecting the issues to raise on appeal. First, Martinez is inapplicable to claims of ineffective assistance of appellate counsel. See Davilla v. Davis, 137 S. Ct. 2058, 2063 (2017) (declining to extend the holding of Martinez to defaulted claims of ineffective assistance of appellate counsel); Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012) ("Martinez applies only to 'a prisoner's procedural default of a claim of ineffective assistance at trial,' not to claims of deficient performance by appellate counsel") (quoting Martinez, 566 U.S. at 8)); Gaither v. Zook, No. 3:16cv64, 2017 U.S. Dist. LEXIS 20596, *9-10 (E.D. Va. Jan. 18, 2017) ("The majority of

---

[15] It is not uncommon for an officer to wear their badge on their belt, which is in the same general vicinity as the officer's weapon.

federal circuit courts have found that the explicit language of <u>Martinez</u> apples to a prisoner's default of a claim of ineffective assistance of trial counsel only") (citing decisions from the Fifth, Sixth, Eighth, Tenth, Eleventh); <u>see, e.g.</u>, <u>Moseley v. Clarke</u>, 3:19cv40, 2019 U.S. Dist. LEXIS 152405, *33 (E.D. Va. Sept. 5, 2019) ("To the extent that Moseley faults appellate counsel for the default of his claim, the explicit language of <u>Martinez</u> applies to an inmate's default of a claim of ineffective assistance of trial counsel only .... Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim") (citation omitted), appealed dismissed, 791 F. App'x 428 (4th Cir.), <u>cert. denied</u>, 141 S. Ct. 301 (2020).

    In any event, Orlina fails to demonstrate that appellate counsel acted unreasonably or how further consultation would have altered the outcome of his case. Matters of appellate strategy fall within the discretion of the attorney. <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (decisions regarding what claims to raise on appeal are matters left to the discretion of appellate counsel). Where it was within appellate counsel's discretion to elect the appropriate strategy for appeal, Orlina fails to demonstrate that it was unreasonable for counsel not to discuss that strategy with Orlina, and Orlina fails to demonstrate that even if appellate counsel discussed his strategy with him, that the outcome of the appeal would have been any different.

## V. Conclusion

For the foregoing reasons, respondent's motion to dismiss [Dkt. No. 11] will be granted, and petitioner's motion to deny the motion to dismiss [Dkt. No. 17] will be denied.[16] An appropriate Order and judgment shall issue.[17]

Entered this _17th_ day of _Jan_ 2023.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

---

[16] Petitioner filed an application to proceed in forma pauperis [Dkt. No. 4], but he had already paid the filing fee. [Dkt. No. 1-4]. Accordingly, the motion to proceed in forma pauperis will be denied as moot.

[17] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.